THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLARENCE WRIGHT, Defendant-Appellant.

Fourth District   No. 13437

Opinion filed November 18, 1976.

GREEN, J., dissenting.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for
appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall and James R.
Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the
court:

The defendant, Clarence Wright, was indicted for the offenses of
felony theft and possession of a burglary tool, a key. He was tried before
a jury and was found guilty of felony theft and not guilty of possession of
the burglary tool. A sentence of not less than 1 nor more than 5 years in the
penitentiary was imposed and the defendant appeals. Upon this appeal,
defendant contends that the evidence was not sufficient to prove his guilt
beyond a reasonable doubt. We agree.

The evidence introduced at trial revealed that a theft occurred from the
cash drawer of an Owens' service station at Danville, Illinois, on
September 14, 1974. A set of keys, including a key to a padlock on the
cash drawer, had been stolen a day or so before the theft. On the night of
the theft from the cash drawer, Dale Cook, an employee of the station,
was the only person on duty. At around 8:45 p.m., a 1971 yellow
Thunderbird pulled into the station and parked by the gas pump which
was closest to the station building. Three passengers got out of the back
seat of the Thunderbird and went into the station building. The driver
and the other occupant of the front seat got out and went to the back of
the Thunderbird where Cook was then located.

According to the testimony of Cook, defendant was the driver of the Thunderbird. Cook was acquainted with the defendant. The defendant requested $1.50 worth of gas and Cook put it in the car. After this transaction was completed, the defendant requested Cook to check the oil and transmission fluid. According to Cook's testimony, all during this time both the defendant and the other occupant of the front seat "seemed to be standing in front of me at all times." The men paid Cook for the gas, the other passengers returned and got into the rear seat of the Thunderbird. Cook returned to the station where he discovered that the cash drawer had been opened. He looked out; the Thunderbird was still there, and he got the license number of the car before the car left the service station area. Cook then called the police.

The cash had been taken from the cash drawer and certain checks were missing. Cook testified that he had been counting the money in the cash drawer prior to the time that the Thunderbird pulled into the station area and that he locked the drawer before he went out to service the Thunderbird.

Two boys who were walking past the station at the time of the theft testified as to their observations inside the station. Danny White, age 16, stated that he saw two boys taking money from the cash drawer and also taking checks, wadding them up and throwing them away. White noticed a white and yellow Thunderbird parked in the service station drive. He also saw the defendant on the drive. Bill Hoopingarner, then age 14, stated that he saw a person known to him as Smitty Evans in the gas station wadding up checks and throwing them in the wastebasket. He did not see the defendant.

An officer of the Danville police department received a radio call which described the 1971 Thunderbird. He received this radio dispatch soon after the theft. Farnsworth proceeded to drive past the Owens' gas station to the Carver Park area in Danville where he found the Thunderbird parked in front of an apartment building. The license number of the car matched the license number which had been given on the radio call. Radio check revealed that the car was owned by the defendant. The officer called a tow truck to the scene. When the tow truck arrived, the defendant came out of one of the apartments, identified himself as the owner of the car. The defendant informed the officer that he had been at the Owens' gas station earlier in the evening. The defendant also told Officer Farnsworth that he did not have a driver's license and that his cousin had been driving the car earlier in the evening. The defendant was arrested. The car, which was unlocked, was towed to the city parking lot. Another officer, James Sloan, used his flashlight to look inside the car and he observed a gold key lying on the floorboard of the Thunderbird on the driver's side of the car. Officer Sloan took it to the Owens' gas station,

where Cook and the manager showed him that the key belonged with, and opened, the padlock on the cash drawer. Both the padlock and the key were admitted into evidence.

At the conclusion of this evidence for the People, the defendant made a motion for a directed verdict on the grounds that the State had failed to prove his guilt or that he was accountable for the actions of those who had committed the theft. This motion was denied. The defendant offered no evidence and at the instruction conference, the defense counsel objected to the giving of an accountability instruction. The jury returned a verdict of guilty of felony theft, not guilty of possession of the key. Defendant's post-trial motion was denied and this appeal follows.

Under the provisions of section 5—2(c) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c)), one may be guilty of an offense if he solicits, aids, abets, agrees or attempts with another person, the commission of the offense or the planning of the offense. In order to be guilty as a principal under the theory of accountability, the State must prove beyond a reasonable doubt that (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) that this participation must have taken place either before or during the commission of the offense; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904; *People v. Harris* (1975), 34 Ill. App. 3d 906, 340 N.E.2d 327.) In both *Tillman* and *Harris,* this court noted with approval the language from *People v. Littleton* (1969), 113 Ill. App. 2d 185, 252 N.E.2d 77, to the effect that a person may aid or abet without actually participating in the overt act or acts and evidence that the accused attaches himself to a group bent on illegal acts with knowledge of the design and purpose of the group, and if he shares the group's common, illegal purpose, will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. In this case, the defendant's conviction is based entirely upon circumstantial evidence. The rule for review of a conviction based upon circumstantial evidence was stated in *Harris.* We there said:

> "The rule is that to support a conviction based on circumstantial evidence, the facts produced must not only be consistent with defendant's guilt, but they must also be inconsistent with any reasonable hypothesis of innocence. Such proof need not be beyond the possibility of a doubt (*People v. Branion,* 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied,* 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213), and may be inferred from the circumstances proved. (*People v. Huff,* 29 Ill. 2d 315, 194 N.E.2d 230.) This rule does not contemplate that the trier of facts is required to search out a series

of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt, but a jury's verdict will be reversed on grounds of insufficient evidence where there is a reasonable and well founded doubt of guilt and the verdict is found to be palpably contrary to the weight of the evidence. *People v. Zuniga,* 53 Ill. 2d 550, 293 N.E.2d 595." 34 Ill. App. 3d 906, 908, 340 N.E.2d 327, 329.

The testimony of the State's witnesses here established, as we have indicated, that three people got out of the back seat of the car, entered the station, and some of them committed a theft. There is no evidence, however, that the defendant participated in, aided, abetted or shared the common illegal purpose demonstrated by the evidence.

Cook stated that the station had three pump islands: two close to the street and one nearer to the building. He testified that the defendant drove his car to the gas pump which was nearest to the station and turned off the car's engine. After the three passengers in the rear got out of the car and entered the station, defendant and the other front seat passenger got out of the car, met Cook at the rear of the car. The evidence is that Cook knew the defendant, having gone to school with him. Cook's testimony that the defendant and the other subject seemed to be standing "in front" of him at all times is not inculpatory in any manner. Exactly what Cook meant by that statement is unclear from the record. The prosecution did not have Cook explain his meaning and there is nothing in the record to indicate that Cook meant to say that the defendant and the other passenger were placing themselves in a position to keep Cook from seeing that which was happening inside the station.

The State relies upon the opinion in *People v. Pendleton* (1966), 75 Ill. App. 2d 314, 221 N.E.2d 112, as a like or similar fact situation (wherein it was determined that the evidence was sufficient to convict). In *Pendleton,* the evidence of the defendant's aiding and abetting the store theft is clear and direct. The defendant's conduct subsequent to the store's theft was perfectly consistent with participation in a theft and, indeed, the subsequent flight had probative value. In this case, the most that the State's evidence establishes is that the defendant was present at the gas station, at the car, at the time the offense was committed inside. There is no other evidence to establish his guilt and no other evidence to establish that he participated in, benefited from, or had knowledge of the offense. When the evidence is so unsatisfactory as to guilt, it is the duty of this court to reverse.

Judgment reversed.

REARDON, J., concurs.

462

Mr. JUSTICE GREEN, dissenting:

I consider the evidence sufficient to have proved the guilt of the defendant beyond a reasonable doubt. The direct evidence is clearly sufficient to prove that those of defendant's companions who went into the station building committed felony theft. Direct evidence is also sufficient to prove that defendant aided those companions by driving them to the Owens station, occupying the time and attention of the sole attendant by purchasing a small amount of gasoline, waiting until the gasoline had been placed in the car's tank and then requesting a check of both the oil and the transmission fluid and finally driving them from the station. The evidence is purely circumstantial only on the issue of defendant's intent in doing these things.

The circumstances of defendant's conduct on the driveway are also some evidence of a specific intention on his part to distract the attendant so that the theft could take place. Motorists seldom request a check of transmission fluid with the purchase of gasoline, particularly only a small amount of gasoline. When service is requested incident to a purchase of gasoline, the service is usually requested at the time the gasoline is ordered. According to the attendant, when he did furnish the requested service to defendant, the defendant seemed to be standing "in front" of the attendant at all times. Although the statement was somewhat ambiguous it tends to show that the defendant's movements were such as to keep the attention of the attendant. Without more evidence, however, these circumstances were insufficient to prove that defendant intended to aid his companions in this theft.

That further evidence is supplied by the circumstances under which defendant happened to be at the service station. The jury could reasonably have believed that the key found in the car was the key used to open the padlock on the cash drawer and was also a key that had been stolen from the station on a day prior to the instant theft. If the jury believed this to be true, it could also believe that at least one person in the Thunderbird automobile had the key in his possession as that car was being driven to the Owens station and had a prior intention to commit the theft. The attendant identified defendant as the person who drove the car to and from the station and requested and paid for the gasoline and service received. Other evidence indicated that defendant was also the owner of the car. Ordinarily he would have been the person to determine when and where to purchase gasoline and seek service for the car. If he decided to go to the Owens station and did not know of the intent of at least one person in the car to attempt a theft at the Owens station and did not intend to aid that theft, his deciding to drive the car to the very station where the theft was intended would be an unlikely coincidence. If a person who did know of the intended theft persuaded him innocently to

go to the Owens station, it would be equally unlikely that that person could also persuade defendant although he was buying only a small amount of gasoline, to also request time consuming service and to wait until the gasoline was in the tank before requesting the service.

I consider the combination of the circumstantial evidence that the key used to unlock the padlock on the cash drawer and the circumstantial evidence of defendant's conduct on the driveway sufficient for the jury to have determined beyond a reasonable doubt that defendant specifically intended to aid others in committing a theft at the Owens station. The jury could properly have determined that any other explanation would be based upon coincidence so unlikely that it could not be considered a reasonable hypothesis.