(No. 52537.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GORDON GOODMAN, Appellant.

*Opinion filed June 20, 1980.*

Edward Neville and Ronald L. Pallmann, of East St. Louis, for appellant.

William J. Scott, Attorney General, of Springfield, and Clyde L. Kuehn, State's Attorney, of Belleville (Donald B. Mackay, Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Martin N. Ashley, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

MR. JUSTICE CLARK delivered the opinion of the court:

Gordon Goodman and Michael Bury were jointly indicted and tried in St. Clair County for a violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(2)). Each defendant was sentenced to the penitentiary for a term of six years. Only Goodman, after his conviction was upheld by the appellate court, one judge dissenting (75 Ill. App. 3d 369), filed the petition for leave to appeal with this court, which was granted.

Defendant contends that hearsay evidence was erroneously admitted during the trial, that the exception to the hearsay rule for declarations by coconspirators is inapplicable to this case, and that because out-of-court statements of codefendant Bury were admitted, defendant was denied his sixth amendment right to confront witnesses. We affirm the appellate court.

The facts, well stated in the appellate court opinion, will be summarized only in the detail necessary to illuminate the legal issue involved. An undercover police officer, Lonnie Inlow, had made arrangements, after extensive negotiations with codefendant Bury, to purchase $2,700 worth of cocaine to be supplied by an unidentified contact. This purchase took place at approximately 7:15 p.m. on March 14, 1978, inside Jacks or Better restaurant. Jacks or Better is located in Fairview Heights.

Undercover agents watched the outside of the restaurant. Other undercover agents stationed themselves at a table next to the one where agent Inlow sat alone waiting for Bury. Defendant Goodman was seen to drive up to the restaurant, followed soon by codefendant Bury, accompanied by another individual who has no connection to this case. Bury, Goodman and the third individual entered the restaurant together and sat down at Inlow's table.

From this point, matters were disputed. Inlow re-

membered Bury saying he had the cocaine and was in a hurry, whereas the defendant's testimony implied that Bury's comments were so ambiguous as to leave him unaware of what was transpiring. It is agreed that one round of drinks was ordered and served and that soon afterward Bury and Inlow went outside to consummate the sale. There Inlow demanded an opportunity to test the purported cocaine and Bury agreed only upon receipt of a $1,000 down payment for his contact. Bury went back inside the restaurant to try to make the appropriate arrangements.

The surveillance agents at the next table recounted that Bury came back in the restaurant, sat down and talked with Goodman for three or four minutes, and that the conversation culminated with Goodman's affirmative nod of the head and with Bury leaving a stack of money on the table, which was "palmed" by Goodman into his right pants pocket. Goodman said, in contrast, that Bury came back in, remained standing, said he was going some place and asked him to watch his money, which was thrown on the table. When Goodman saw the $100 denominations, he said he got nervous and put it in his pocket for safekeeping. The conversation with Bury, he said, lasted only one or two minutes.

The evidence complained of concerned agent Inlow's conversations with codefendant Bury prior to and during the sale. Bury did not testify. In these conversations agent Inlow quoted Bury as saying that his contact lived in rural Okawville in a trailer and had disconnected his phone out of fear of a wiretap. Goodman lived in a trailer in Okawville and had reconnected his telephone only recently. (Goodman said his phone was disconnected when he was laid off from work.) When Inlow and Bury went outside the restaurant on the night of the sale and when Inlow asked to test the cocaine, Bury said, "My man would

freak if I left with his cocaine." It was in response to this comment that Inlow offered the $1,000 as security.

Defendant has accepted the traditional formulation of the declarations-of-coconspirators exception to the hearsay rule: such declarations are admissible against all conspirators upon an independent, *prima facie* evidentiary showing of a conspiracy or joint venture between the declarant and one of the other defendants, insofar as such declarations are made in furtherance of and during the pendency of the conspiracy, even in the absence of a conspiracy indictment. (*United States v. Nixon* (1974), 418 U.S. 683, 701 & n.14, 41 L. Ed. 2d 1039, 1060 & n.14, 94 S. Ct. 3090, 3104 & n.14; *Anderson v. United States* (1974), 417 U.S. 211, 218, 41 L. Ed. 2d 20, 28, 94 S. Ct. 2253, 2259; *People v. Davis* (1970), 46 Ill. 2d 554, 558-59; *People v. Parson* (1963), 27 Ill. 2d 263; see generally, Levie, *Hearsay and Conspiracy, A Reexamination of the Co-Conspirators' Exception to the Hearsay Rule,* 52 Mich. L. Rev. 1159 (1954); Comment, *The Hearsay Exception For Co-Conspirators' Declarations,* 25 U. Chi. L. Rev. 530 (1958); Comment, *Reconstructing the Independent Evidence Requirement of the Coconspirator Hearsay Exception,* 127 U. Pa. L. Rev. 1439 (1979).) Defendant contends only that there was insufficient independent evidence to make a *prima facie* case of the existence of a conspiracy between Goodman and Bury and that the coconspirators exception, as applied here, violates the ruling of the United States Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

There was sufficient independent evidence of conspiracy. Goodman admitted he had been a very close friend of Bury for over 10 years. According to Inlow, Bury announced that he had the cocaine in Goodman's presence, negating defendant's claim of ignorance of the

nature of the transaction. Bury and Goodman were seen in discussion after Inlow requested a test of the cocaine and offered $1,000 as security. Goodman was seen to affirmatively nod his head to Bury and to receive $1,000 in cash. (This money was marked and was found on Goodman when he was arrested.) This is evidence from which an agreement to sell cocaine could be inferred. Therefore, because a sufficient *prima facie* case of conspiracy was shown by independent evidence, the evidence was properly admitted. (It is preferable for the independent evidence of conspiracy to be introduced prior to the admission of a coconspirator's declarations (see *United States v. James* (5th Cir. 1979), 590 F.2d 575, 581-82), but there is no mandatory rule to this effect.)

The admission of Bury's declarations, further, was not contrary to *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. This court fully discussed this issue in *People v. Davis* (1970), 46 Ill. 2d 554, 557-59, where it was held that evidence admissible under the coconspirator exception to the hearsay rule did not violate the confrontation clause of the sixth amendment because defendants were able to confront and cross-examine witnesses who alleged that the statements at issue were made.

Since *Davis* was decided, the United States Supreme Court considered again the relationship of the confrontation clause to the hearsay rule in *Dutton v. Evans* (1970), 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210.

In *Dutton* a plurality of the court upheld the application of a Georgia statute permitting the admission of coconspirators' out-of-court declarations made during the concealment phase of a conspiracy. The court manifested "a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' [Citation.]" (400 U.S. 74, 89, 27

L. Ed. 2d 213, 227, 91 S. Ct. 210, 220.) Because (1) the statement was not an assertion about a past fact, (2) abundant evidence showed that the declarant had personal knowledge of the incident, (3) it was unlikely that the declarant's statement was founded upon faulty recollection and (4) the statement made was spontaneous and against the declarant's penal interest, it was not so unreliable as to warrant its exclusion from evidence. (400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 227, 91 S. Ct. 210, 219.) It also was noted that the statements at issue were not crucial or devastating and that the defendant was able to cross-examine the person who contended that the statement was made. (400 U.S. 74, 87-88, 27 L. Ed. 2d 213, 226, 91 S. Ct. 210, 219.) Mr. Justice Harlan, concurring, eschewed reliance upon the confrontation clause in favor of the due process clause and wrote that the declaration was admissible out of necessity and because of indicia of trustworthiness. 400 U.S. 74, 93-100, 27 L. Ed. 2d 213, 229-33, 91 S. Ct. 210, 222-25.

This case bolsters our opinion in *People v. Davis* (1970), 46 Ill. 2d 554, and supports our determination that the statements made by Bury in the instant case were admissible. The declarations themselves were made in furtherance of and during the pendency of the conspiracy and were not self-serving. (See Levie, *Hearsay and Conspiracy, A Reexamination of the Co-Conspirator's Exception to the Hearsay Rule,* 52 Mich. L. Rev. 1159, 1167-72 (1954).) Bury himself had knowledge of the salient facts, and it is wholly unlikely that his recollection was faulty. Many of these declarations, moreover, were made spontaneously and all were against his penal interest. (*Cf. Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048.) The defendant was able to cross-examine the officer who contended that the statements were made. The statements themselves were not devastating assertions about past facts but were,

rather, only inferentially inculpatory assertions about contemporaneous events.

For the foregoing reasons we affirm the appellate court.

*Judgment affirmed.*