THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY DEATHERAGE, Defendant-Appellant.

Third District   No. 82—813

Opinion filed March 16, 1984.

BARRY, J., specially concurring.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Patricia Hartmann, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Together with Danny Cabage, the defendant, Gary Deatherage, was indicted for the unlawful delivery of less than 30 grams of a substance containing cocaine. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(b).) The defendant was tried separately before a jury and convicted as charged. He was sentenced to three years' imprisonment.

The State's case was based on an accountability theory. On appeal, the defendant contends: (1) that he was not proven guilty beyond a reasonable doubt because the State's evidence of his accountability was entirely circumstantial and his conduct was explainable by a reasonable hypothesis of innocence; (2) that the trial judge improperly admitted into evidence hearsay statements made by Danny Cabage; (3) that he was prejudiced by the prosecutor's closing argument; and (4) that the trial judge erred in giving only the first paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed.

1981), on circumstantial evidence.

The only occurrence witness at the defendant's trial was undercover agent Francis Simmons. His testimony established that the defendant was present in the Sports Page tavern at approximately 1:45 p.m. on February 11, 1982, when he (Simmons) entered the tavern with Gary DuPoy, a fellow agent. DuPoy introduced Simmons to Cabage, who was standing near the entrance to the bar. The defendant was sitting in the middle of the bar.

Simmons, DuPoy and Cabage talked for awhile in the bar and then went outside to the parking lot. After more conversation, Simmons and DuPoy left and Cabage returned to the bar. The two agents met with police officers and then returned to the tavern at about 2:30 p.m. to set up a meeting for the purchase of cannabis from Cabage.

Simmons saw Cabage as he entered the bar. The two went outside where Simmons arranged for the purchase of cannabis. Simmons then asked Cabage if he could obtain a taste of cocaine. Cabage replied that he would have to contact another "guy." The two agreed that Simmons would telephone Cabage at his home at 5 p.m. Simmons did not see the defendant at this time.

The 5 p.m. telephone call was not made. Instead, Simmons and DuPoy went to Cabage's home at 5:30 p.m. Cabage met them at the door. The defendant was seated on the living room couch, watching television.

Upon entering the room, Simmons expressed concern at the presence of someone new. There was some confusion about the exact conversation that took place then, but it is undisputed that Cabage showed Simmons a sample of cocaine and told him not to worry about the defendant's presence. DuPoy and Cabage both said they knew the defendant, and at some point, Simmons shook the defendant's hand, telling him he had nothing against him.

Cabage told Simmons that the cocaine he showed him was the best he had ever purchased. He stated that he would sell some of it to Simmons for $100 per gram. When Simmons asked if he could get more, Cabage asked the defendant what the source had said about the price. The defendant replied that it was $200 a gram, but that the source had purchased an "8th" for $285.

Simmons then asked about the cannabis, and Cabage replied that it was in the car. As they were about to go outside to get the cannabis, Simmons asked the defendant if he could get more cocaine from the source. The defendant started to answer, but Cabage interrupted and talked to Simmons about the quality and quantity of the cocaine.

Cabage and Simmons obtained a carton from Cabage's car and re-

turned to the house. Simmons, DuPoy and Cabage entered a bedroom where Cabage dumped five pounds of cannabis on the bed. Simmons paid Cabage $1,930, of which $200 was for two grams of cocaine, and then asked who could get him cocaine in the future. Cabage replied that he would have to "go through that guy plus another guy." Simmons understood the reference to "that guy" to be a reference to the defendant. Shortly after the transaction in the bedroom took place, Simmons and DuPoy left the house.

On appeal, the defendant contends that the evidence did not establish accountability beyond a reasonable doubt. Before we address this issue, we turn our attention to the second issue raised by the defendant; that is, whether the trial court erred in admitting the hearsay declarations of Danny Cabage.

■■ ■ Those statements attributable to Cabage in Agent Simmons' testimony were admitted under the co-conspirator exception to the hearsay rule. To admit statements by a co-conspirator, which would otherwise be barred by the hearsay rule, the State must establish the existence of a conspiracy by nonhearsay evidence. Once a *prima facie* showing of a joint venture has been established by a preponderance of the evidence, statements made by a co-conspirator of a party during the course and in furtherance of the conspiracy may be admitted. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) While proof of the illicit association between the declarant and the defendant may be totally circumstantial (*United States v. Cicale* (2d Cir. 1982), 691 F.2d 95), it must be sufficient, substantial and independent of the declarations. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215; *United States v. Nixon* (1974), 418 U.S. 683, 701 n.14, 41 L. Ed. 2d 1039, 1060 n.14, 94 S. Ct. 3090, 3104 n.14.) A preponderance of the nonhearsay evidence in the case at bar does not support a finding of a conspiracy between Danny Cabage and the defendant.

The defendant was not actively involved in the first two meetings of Simmons and Cabage. During the first meeting, which occurred in the Sports Page tavern's parking lot, the defendant was seated inside the bar. The second meeting also took place in the parking lot. Simmons did not see the defendant at this time. The defendant was present at the Cabage home when Simmons and DuPoy arrived to purchase the cannabis, and he answered a question about the price of cocaine put to him by Cabage. This evidence is hardly sufficient to establish a conspiracy between Cabage and the defendant for the delivery of cocaine to Simmons. There is no evidence of an agreement between the two, which is the essence of a conspiracy. Mere knowledge

or acquiescence of an illegal act does not constitute conspiracy. *People v. Mordick* (1981), 94 Ill. App. 3d 497, 418 N.E.2d 1057.

Because a conspiracy between Cabage and the defendant was not proven, the trial court erred in admitting all of the statements attributable to Cabage. We need not address the question of whether one particular declaration by Cabage was admissible as an implied admission by the defendant. Since none of Cabage's out-of-court statements were admissible, one particular statement cannot serve as the basis of an implied admission by the defendant.

■■ ■ Turning now to the first issue raised by the defendant, we hold that his conviction of unlawful delivery based on an accountability theory cannot stand. To sustain such a conviction, the State must establish beyond a reasonable doubt that: (1) the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the delivery; (2) the defendant's participation took place before or during the commission of the delivery, and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2; *People v. Trapps* (1974), 22 Ill. App. 3d 1029, 318 N.E.2d 108.) Mere presence at the scene of a crime and knowledge that a crime is being committed is insufficient to establish guilt. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Where the evidence is entirely circumstantial, as it is in the case at bar, guilt must be established so as to exclude every reasonable hypothesis of innocence. *People v. Grizzel* (1943), 382 Ill. 11, 46 N.E.2d 78; *People v. Wright* (1976), 43 Ill. App. 3d 458, 357 N.E.2d 224.

In the present case, the evidence shows only that the defendant was present and that he may have known about the transaction. The references made by Cabage to another "guy" were too vague to implicate the defendant. In addition, it is possible that the defendant, while obviously an individual somewhat knowledgeable about the local cocaine trade, was merely an innocent bystander. Such an innocent interpretation is supported by the evidence.

For the foregoing reasons, we find the evidence insufficient to sustain the defendant's conviction of unlawful delivery on an accountability theory. This is so even with consideration of the improperly admitted hearsay declarations by Cabage. Without those statements, there clearly is no case against the defendant.

For the foregoing reasons the judgment of the circuit court of Peoria County is reversed.

Reversed.

HEIPLE, J., concurs.

JUSTICE BARRY, specially concurring:
I agree with the result reached by the majority, but not all of the reasoning provided therefor. I agree that the hearsay declarations by Cabage were improperly admitted, and without such declarations there was insufficient evidence to convict this defendant of the offense charged. Had the statements been properly admitted there may have been enough evidence to support a conviction.