THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER S. DONATELLI, Defendant-Appellant.

Third District   No. 3—87—0861

Opinion filed December 6, 1988.

HEIPLE, J., dissenting.

Alan K. Schmidt, of Morrison, for appellant.

Gary L. Spencer, State's Attorney, of Morrison, and Howard R. Wertz, of Gallagher, Fuenty & Klein, of De Kalb (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:
Defendant was charged with gambling in violation of section 28—

1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 28—1(a)(1)). He opted for a bench trial by the circuit court of Whiteside County and was found guilty as charged. Defendant was sentenced to pay a fine of $100, court costs and fees for the services of the public defender. In addition, $447 in currency removed from defendant upon his arrest was ordered forfeited. In this appeal, defendant contends that the evidence was insufficient to support a conviction on the State's theory of accountability. We affirm.

The record on appeal consists of a common law record and a four-page agreed statement of facts. According to the latter, Rock Falls police officer Mike Kuelper reported suspicious activity at a home located at 1116 Lincoln Street, Rock Falls, Illinois, at 11:55 p.m. on April 5, 1987. Around 1:50 a.m. on April 6, Sergeant James Kerns of the Illinois State Police, together with 23 police officers, arrived at the home to execute a search warrant. Kerns looked through a basement window and observed 10 persons, including defendant, around what appeared to be a dice table. One person was using a stick and pushing around what appeared to be dice. During the 9- to 10-minute period of his observation, Kerns did not see defendant leave the table. Kerns saw the participants scatter among muffled shouts, as several officers appeared for the purpose of conducting their search. Kerns also testified that a television camera was posted over the door to the home and a monitor was in the basement.

State trooper Mary Jesse was the first officer to enter the premises. She was in plain clothes and waved a beer can prop to the camera when seeking admission. Mr. Cheshier, the owner of the home, opened the door. Jesse stepped in, followed by other officers. Someone yelled "Cops," and there was a flurry of activity as Jesse entered the basement area. A video recording of the scene was made by one of the officers several minutes after they entered the basement.

At trial, the video recording was entered into evidence. It showed defendant near the foot of the stairs, several feet away from the table. The officers arrested defendant and several others in the room and seized $17,000 in cash, the table, television monitor, dice, playing cards, a croupier's rake, and metallic numbers affixed to the table. Defendant had $447 in cash on his person and a check for $110. Currency was found on the table, in a drip box attached to the table, inside a turkey carcass, in a trash can, behind the basement door and behind the freezer.

An individual named Rippy testified at trial under a grant of transactional immunity. He was the person who had handled the rake during the game, which he described as "pretend craps." Rippy de-

nied seeing any money exchange hands during the game and said that he did not see any dice either. Rippy further denied seeing defendant gambling on the night in question. According to Rippy, defendant was just watching television.

Rippy's testimony was impeached by Officer Terry Anderson, who testified that Rippy had told him at the Rock Falls police station around 2:30 a.m. on the morning of the raid that Cheshier had hired him as a "raker." He admitted that several persons had been gambling in the house that night, but Rippy did not wish to name anyone. It appears from the common law record that defendant presented evidence at trial; however, the details of that testimony do not appear in the agreed statement.

Based on the evidence presented, the court found defendant guilty on the State's theory of accountability and sentenced him as aforesaid.

Defendant contends in this appeal that the evidence established his mere presence and was, therefore, insufficient to sustain his conviction. The law of accountability as it applies in this case appears in section 5—2 of the Criminal Code of 1961: "A person is legally accountable for the conduct of another when *** [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).

■ Clearly the offense of gambling was committed in Cheshier's basement on the night of April 5-6, 1987. Defendant urges that we extrapolate from the attorneys' condensed version of evidence admitted at trial that he was a mere bystander during the gambling activities that took place that night. Were we to credit the abbreviated report of facts with the same weight as a fully reported, verbatim report of proceeding, defendant's position on appeal would appear difficult to counter. However, as the State is quick to point out, it is the duty of the defendant, as appellant, to preserve an adequate record from which to review his claim of error (*People v. Smith* (1969), 42 Ill. 2d 479, 248 N.E.2d 68), and it is apparent that all of the evidence presented at the trial in this case is not before us. Moreover, it is not the function of this court to retry the defendant, weigh the evidence or determine the credibility of the witnesses.

■ The trial court, as trier of fact, obviously found that the evidence, even though circumstantial, was sufficient to prove defendant's guilt beyond a reasonable doubt. The question we must address on review is whether, considering all of the evidence in the light most fa-

vorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Prior to the raid, defendant was observed for several minutes standing at the table where gambling took place. He left the table and moved to the foot of the basement stairs when the announcement and nearly simultaneous arrival of the police occurred. Viewed in the light most favorable to the prosecution, defendant's attempted flight and knowledge of guilt can be inferred from this observed activity. Defendant possessed a substantial quantity of currency on his person at the time of his arrest. The trial judge was not required to believe the exonerating version of defendant's activities as recounted by Rippy at trial. Thus, notwithstanding Rippy's impeached testimony and any conflicting testimony that may have been offered by the defendant, we find that the totality of the State's evidence supports the conclusion that defendant was a direct or indirect participant in the illegal activity, and that, with the requisite mental state, defendant thereby aided, abetted, agreed or attempted to aid another in the gambling enterprise. Although the State's evidence did not conclusively establish that defendant had played a gambling game, the evidence in the record before us is sufficient to support a finding beyond a reasonable doubt that defendant was an accomplice and not a mere bystander to the evening's gambling activities.

The judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE HEIPLE, dissenting:

While I agree with the majority that the evidence clearly establishes that the offense of gambling was committed in Cheshier's basement on the night of April 5-6, 1987, I do not agree that the State proved the defendant's guilt beyond a reasonable doubt.

The State relied on the theory of accountability, which means it had to establish beyond a reasonable doubt that before or during the commission of the crime, the defendant solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the crime, and that he had the concurrent, specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2.) However, accountability theory was not properly in-

voked in this case because none of the evidence suggests that the defendant was in any way accountable for the gambling activities of the others. The circumstances of the case indicate only that the defendant was present and was an observer. Even the majority acknowledges that the evidence does not establish that the defendant actually participated in the gambling.

Assuming, *arguendo*, that the State properly applied accountability theory here, it failed to prove the defendant guilty beyond a reasonable doubt. In affirming the defendant's conviction, the majority relies on three pieces of evidence: the defendant was observed standing by the gambling table for several minutes; he moved several feet away from the table when the police arrived; and he had a substantial amount of money on his person when he was arrested. Courts have repeatedly held that mere presence at the scene of a crime and knowledge that a crime is being committed are insufficient to establish guilt. (See, *e.g.*, *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624.) Where the evidence is entirely circumstantial, as it is here, guilt must be established to exclude every reasonable hypothesis of innocence. (122 Ill. App. 3d at 624.) In the case at bar, the evidence established no more than that the defendant was present and that he was aware of the crime. That the defendant had money on his person proves nothing. There was no evidence that the defendant had an active role in the commission of the crime or that he attempted to aid or encourage the participants in any way.

The majority views the defendant's move away from the table as evidence of his attempted flight and knowledge of guilt. I disagree. The defendant's movement away from the table can also reasonably be viewed as the defendant's knowledge of the others' guilt rather than his own, and as a logical response to the rush of incoming police officers. None of the defendant's conduct is inconsistent with that of an innocent person.

The evidence fails to establish the defendant's guilt beyond a reasonable doubt, either directly or on an accountability theory. I would reversed the conviction. Accordingly, I dissent..