THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARMEN MARTINEZ, Defendant-Appellant.

First District (2nd Division)   No. 1—94—2030

Opinion filed February 13, 1996.

Michael A. Johnson and Ronald S. Tulin, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Katherine S.W. Schweit, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On September 11, 1990, Officer Bruce Kading, special agent with the United States Immigration and Naturalization Service drug task force, acting undercover, made arrangements to purchase five ounces of cocaine from Jose Colon for $5,000. At about 2 p.m. that day, Kading went to 808 North Western Avenue in Chicago, the prearranged meeting place, and parked his undercover car on the west side of the street facing south. From 20 feet away, Kading noticed two women, defendant Carmen Martinez[1] and Wanda Flores, standing with Colon in front of an ice-cream store located at 808 North Western Avenue. Colon approached Kading's vehicle and told him that the person who was bringing the cocaine would be there in 15 minutes. Colon then returned to the front of the store and rejoined defendant and Flores. According to Kading, the three appeared to be talking.

At 2:15, Kading saw defendant remove a piece of paper from her purse and give it to Flores. Both Kading and Frank Guerra, another surveillance officer, testified that Flores took the paper and walked south on Western Avenue toward the Lighthouse, a restaurant. The parties stipulated that a telephone call was made from co-conspirator Ramon Otero's mobile phone to the Lighthouse restaurant at 2:17 p.m.

A few minutes later, Flores returned to the ice-cream store where Colon and defendant were standing and apparently conversing. After Kading had waved Colon over to his car, Colon told him that the source would arrive in five minutes. Flores also approached Kading's car and told him that she had just talked to the source on the car phone, and that he was somewhere north and would be arriving in five minutes. Colon and Flores then returned to the front of the store.

Five minutes later, defendant, carrying only a small black purse, walked to the corner of Chicago and Western and entered a grey Cadillac driven by Otero. The car turned east on Chicago Avenue,

---

[1]Defendant Martinez was also known as Esther Penya; however, to avoid confusion, this order will refer to her as Carmen Martinez or defendant.

circled the block, and parked at the gas station on the corner of Rice and Western where undercover surveillance agent Kenneth R. Burkhart was also parked. From 15 feet away, Agent Burkhart saw defendant get out of the Cadillac holding her black purse. She then reached into the car and pulled out a brown paper bag, a bit smaller than a grocery bag, but larger than her purse. Defendant left the vicinity of the gas station and walked across the street to just north of 808 North Western Avenue, where she met Colon, and handed him the bag. Colon and defendant walked over to Kading's car, and Colon entered the passenger section with the brown paper bag. Defendant crouched beside Kading's passenger car door and looked on as Kading and Colon completed their drug transaction. Colon removed five wrapped bags containing cocaine from the brown paper bag, and after Kading paid Colon, Kading signaled to the surveillance officers in the area and Otero, Colon, Flores, and defendant were arrested. No fingerprints were taken from the brown bag.

Defendant was found guilty of unlawfully and knowingly delivering a controlled substance (specifically, over 100 grams of cocaine) in violation of section 401(a)(2)(B) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(B)(West 1994)) on an accountability theory, conviction of which constitutes a Class Super X felony and carries a minimum sentence of nine years' imprisonment. Prior to sentencing, however, the trial judge took into consideration that Colon received only six years, and, deciding that it was not fair to award a longer sentence to defendant, he sentenced her to six years under the lesser included offense of possession of a controlled substance. However, on motion of the State, the supreme court issued a supervisory order requiring the trial judge to vacate the six-year sentence and to impose one based on the conviction of delivery of a controlled substance. Pursuant to that order, the trial judge sentenced defendant to nine years in the custody of the Department of Corrections and fined her $2,500.

Defendant appeals, claiming (1) that the trial court erred in finding her guilty beyond a reasonable doubt; (2) that it also erred in admitting hearsay statements under the co-conspirator hearsay exception; (3) that her constitutional right against double jeopardy was violated when the trial court resentenced her pursuant to a supreme court order, and (4) that she was denied her statutory right to $5-a-day credit against her fine.

■ Whether the evidence is sufficient to sustain a conviction on appeal is determined by whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a rea-

sonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

■ To sustain a conviction for delivery of a controlled substance on the basis of accountability, the State must establish the following beyond a reasonable doubt:

> "(1) the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the delivery; (2) the defendant's participation took place before or during the commission of the delivery, and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense." (*People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624, 461 N.E.2d 631.)

(See 720 ILCS 5/5—2 (West 1994) (formerly Ill. Rev. Stat. 1981, ch. 38, par. 5—2).) Mere presence at the scene of a crime and knowledge that a crime is being committed are not alone sufficient to establish guilt on an accountability theory. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) However, a fact finder may infer a defendant's accountability from her approving presence at the scene of the crime (*People v. Roppo* (1992), 234 Ill. App. 3d 116, 126, 599 N.E.2d 974) and from evidence of conduct showing a design on defendant's part to aid in the offense. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544.

■ Defendant, citing *Deatherage*, argues that there was insufficient evidence to find her guilty. In *Deatherage*, there was evidence that defendant was present during the drug transaction, that he may have known about it, and that he answered a question about the price of drugs, but the court held that it was not enough to sustain an unlawful delivery conviction on a theory of accountability. (*Deatherage*, 122 Ill. App. 3d at 623-24.) In contrast to *Deatherage*, however, defendant here, as the facts amply indicate, contributed much more to the transaction than Deatherage's mere presence and knowledge of the price of drugs.

Defendant also contends that her case is similar to *People v. Darnell* (1990), 214 Ill. App. 3d 345, 573 N.E.2d 1252, where all the defendant did was hand a bag of drugs to a codefendant who was in the process of selling them to an undercover officer. (*Darnell*, 214 Ill. App. 3d 345, 573 N.E.2d 1252.) Defendant Velez in that case testified that she never looked in the bag and did not know it contained drugs. (*Darnell*, 214 Ill. App. 3d at 362.) In fact, all three of the alleged coconspirators claimed that Velez did not know what was in the bag. (*Darnell*, 214 Ill. App. 3d at 362.) The *Darnell* court distinguished *People v. Pintos* (1988), 172 Ill. App. 3d 1096, 527 N.E.2d 312, *aff'd*

(1989), 133 Ill. 2d 286, 549 N.E.2d 344, in which it was held that the totality of the circumstances established that the defendant had knowledge that the package he transported contained cocaine. (*Darnell*, 214 Ill. App. 3d at 367.) In *Darnell*, there was not enough evidence to find the defendant guilty of unlawful delivery because the facts demonstrated that Velez merely held the bag for a matter of minutes. *Darnell*, 214 Ill. App. 3d at 367.

Although, as in *Darnell*, defendant here held the bag for only a few minutes, and there is no evidence that she looked in the bag, there was much more evidence implicating her in the transaction than merely handing over the bag. It was therefore not an abuse of discretion for the trial court to hold that defendant's "approving presence" at the scene of the crime (*Roppo*, 234 Ill. App. 3d at 126), coupled with her affirmative acts, amounted to guilt beyond a reasonable doubt. See *Pintos*, 172 Ill. App. 3d at 1101 (guilt based on "entire chain of circumstances").

The facts the trial judge had before him in this case were not a series of isolated and unrelated incidents. On the contrary, the record here reflects a concatenation of events which demonstrates a clear understanding on the part of each of the actors of what his or her role was in a unitary scheme that led to the sale and delivery of an object that does not lend itself to being marketed in any manner except in the covert, clandestine system that was so precisely executed in this case. There can be no other way of viewing defendant's handing a piece of paper to Flores; Flores' walking over to a nearby restaurant to receive a phone message from a supplier of drugs; Flores' returning to inform Kading of the imminent arrival of the drugs; defendant's entering the supplier's car only to circle the block and park; defendant's bringing out of the car a brown bag containing the drugs; defendant's walking across the street and handing the drugs to Colon; and defendant's going to Kading's car with Colon and looking on as Colon and Kading completed their transaction, with the drugs in open view. It becomes tediously obvious, therefore, that defendant attached herself to this venture and sought affirmatively to promote its success.

■ Defendant also maintains that she should not have been found guilty because there was no evidence that she arranged to sell Officer Kading the cocaine. However, defendant cites no case and we are unable to find any authority making participation in the *arrangement* of a drug deal a necessary ingredient of accountability. Indeed, as we have already noted above in our discussion of *Deatherage*, a defendant's participation *before or during the commission of the delivery* is enough to sustain a conviction for delivery of a controlled substance. *Deatherage*, 121 Ill. App. 3d at 624.

■ Defendant further contends that the record is not clear that she handed the brown bag to Colon, because Officer Burkhart did not testify that he saw her do it, despite the fact that he was within sight of Kading's vehicle. However, defendant overlooks that Officer Guerra also testified that he saw her hand the bag to Colon. Testimony of one credible witness, such as Officer Guerra, is sufficient to sustain a conviction. (*Collins*, 106 Ill. 2d at 261; *People v. Young* (1994), 263 Ill. App. 3d 627, 635 N.E.2d 473.) Also without merit is defendant's argument that her conviction should be reversed because no fingerprints were taken from the bag, for she overlooks also that Officer Guerra's and Officer Burkhart's unrebutted testimony is that she held the bag.

Consequently, given the decidedly sufficient evidence against defendant, we hold that the trial court did not err in finding her guilty beyond a reasonable doubt.

■ In addition, defendant complains that three co-conspirator hearsay statements testified to by Officer Kading should not have been admitted because the State had failed to demonstrate a *prima facie* case of conspiracy. The statements are as follows: (1) that Colon told Kading that the cocaine would arrive in 15 minutes; (2) that Colon also told him the cocaine would arrive in five minutes; and (3) that Flores told him that she had just talked to the source and that the drugs were just north of the vicinity and would be there in five minutes. Although defendant objected to these statements at trial, the State maintains that the issue is waived because she failed to raise a proper objection in her motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274 (a party waives an issue for review where it fails to object at trial *and* in a post-trial motion, unless excused for plain error).) Here, it is impossible to determine whether an objection was raised in the motion for a new trial because there is no such motion contained in the record. However, without any protest from defendant, the trial court stated "[i]n regard to Carmen Martinez, the [post-trial] motion only deals with proof beyond a reasonable doubt." Thus, we must assume that there was no objection to the hearsay statements in defendant's motion for a new trial; therefore, the argument is waived on appeal. *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

However, to ameliorate the severity of the waiver rule, Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) allows the reviewing court to consider " 'an error which deprived the defendant of a fair and impartial trial or any substantial error which occurs in cases where the evidence is closely balanced.' " *People v. Gonzalez* (1992), 238 Ill.

App. 3d 303, 314, 606 N.E.2d 304, quoting *People v. Schmidt* (1988), 168 Ill. App. 3d 873, 878, 522 N.E.2d 1317, *appeal denied* (1988), 122 Ill. 2d 589, 530 N.E.2d 259.[2]

Assuming, *arguendo*, that the statements were inadmissible, we hold that there would still be more than sufficient evidence to convict. Furthermore, the evidence relied upon by the trial court, and which we have already set forth twice in this opinion—none of which depends upon hearsay testimony—was not "closely balanced." We must therefore decline to consider the issue under the plain error doctrine.

■ However, even if we were to consider defendant's claim under the plain error doctrine, we would necessarily hold that the trial court did not err in admitting the statements complained of. The co-conspirator exception to the hearsay rule provides that any act or declaration by a co-conspirator of a party committed in furtherance of the conspiracy and during its pendency is admissible against each and every co-conspirator, provided that there exists a foundation of independent proof of the conspiracy. *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.

A "*prima facie* case [of a conspiracy] must show that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach a common end by criminal means" (*Roppo*, 234 Ill. App. 3d at 123); further, the case must be "established by a preponderance of nonhearsay evidence, independent of the statement itself [citation], which occurs either before or after the alleged hearsay testimony"; and the existence of the agreement among the persons engaged in the plan may be inferred from all the surrounding facts and circumstances. *Pintos*, 172 Ill. App. 3d at 1105.

■ The trial court in the instant case, after having recited all the surrounding facts and circumstances, deliberately excluding the disputed statements, properly found that there was a *prima facie* case of conspiracy and that therefore they were admissible. But defendant insists, citing *Darnell* and *Deatherage*, that when these statements are excluded, the evidence shows that defendant was merely present during the commission of the crime. (*Darnell*, 214 Ill. App. 3d at 364; *Deatherage*, 122 Ill. App. 3d 620, 461 N.E.2d 631.) Yet, as we

---

[2]Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) states:

"Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

have delineated above, the evidence, excluding co-conspirator hearsay testimony, amounted to much more than mere presence. The surrounding facts and circumstances were enough to establish a *prima facie* case of conspiracy. (*People v. Melgoza* (1992), 231 Ill. App. 3d 510, 524, 595 N.E.2d 1261 (finding that suspicious activities together while an illegal transaction was in progress were sufficient for a *prima facie* case of conspiracy).) Furthermore, these statements were made in furtherance of and during the pendency of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) Thus, the trial court did not err in admitting the co-conspirator hearsay statements and defendant is not entitled to a new trial.

■ Defendant also claims that her right against double jeopardy was violated because she was resentenced. It is hornbook law that a person cannot be placed in jeopardy twice for the same offense. (See Ill. Const. 1970, art. I, § 10; U.S. Const., amends. V, XIV.) As noted above, the trial court sentenced defendant to six years, the mandatory minimum for a conviction of possession of a controlled substance. Defendant urges that her constitutional right against double jeopardy was violated when the trial court, pursuant to the supreme court's supervisory order, resentenced her to nine years' imprisonment, the mandatory minimum sentence for the offense of delivery of 100 grams or more of a controlled substance. 720 ILCS 570/401(a)(2)(B) (West 1994).

In *People v. Gaston* (1994), 259 Ill. App. 3d 869, 631 N.E.2d 311, *appeal denied* (1994), 156 Ill. 2d 561, 638 N.E.2d 1120, it was held that this court has no jurisdiction to review a supreme court order vacating a defendant's acquittal, reinstating a prior conviction, and ordering the trial court to resentence the defendant. (*Gaston*, 259 Ill. App. 3d 869, 631 N.E.2d 311.) According to *Gaston*, "[o]nce an issue has been decided by the supreme court, the only question which may be considered upon a subsequent appeal involving the same issue is whether the trial court followed the supreme court's mandate." (*Gaston*, 259 Ill. App. 3d at 876.) Under *Gaston*, the supreme court, "by virtue of its orders" to resentence defendant, rejected defendant's double jeopardy claim; thus, we have no jurisdiction to review the supreme court's decision in this case. *Gaston*, 259 Ill. App. 3d at 877.

■ Assuming, *arguendo*, that we have jurisdiction to decide the double jeopardy issue, we would be compelled to hold that defendant's right was not violated. To support her position, defendant claims that she was found guilty of the lesser crime of possession and cites *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 427 N.E.2d 1212. *Limperis* held that it is double jeopardy to *convict* and resentence on the greater offense if the defendant is *convicted* of the lesser included of-

fense, based on the well-established principle that "conviction of a lesser offense operates as an acquittal of a greater offense." *Limperis*, 86 Ill. 2d at 466.

Defendant incorrectly maintains that she was convicted of the lesser crime of possession. Clearly, defendant was convicted of *delivery* of a controlled substance, the trial court having stated:

> "Based on the evidence in the case, the defendant is found guilty of the charge of delivery of a controlled substance in the manner and form set forth in the indictment. The charge being a Class Super X felony carrying a minimum sentence of not less than 9 *** years in the Department of Corrections."

Because the issue here involves only resentencing, *Limperis* is easily distinguishable.

*People v. Levin* (1993), 157 Ill. 2d 138, 623 N.E.2d 317, *cert. denied* (1994), 513 U.S. 826, 130 L. Ed. 2d 44, 115 S. Ct. 94, is a case similar to and controls the result of the one at issue. In *Levin*, the defendants' sentences were vacated and the cases were remanded to the trial court for resentencing. (*Levin*, 157 Ill. 2d at 143.) The supreme court was

> "asked to decide whether, at resentencing, double jeopardy bars the State's second attempt to establish a defendant's eligibility for enhanced sentencing under either the Class X sentencing provision or the Habitual Criminal Act, where the appellate court *** vacated the defendant's sentence for the State's failure to prove such eligibility in the first sentencing proceeding." (*Levin*, 157 Ill. 2d at 142.)

According to the supreme court, double jeopardy principles are not applied to sentencing because the "imposition of a particular sentence usually is not regarded as an acquittal of any more severe sentence than could have been imposed." (*Levin*, 157 Ill. 2d at 144.) The only exception relates to capital cases, as stated in *Burlington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852, where the United States Supreme Court found that Missouri's sentencing hearing for capital cases was similar to a trial on the issue of guilt. (See *Levin*, 157 Ill. 2d at 147 ("[D]ouble jeopardy may be implicated in resentencing in capital cases in Illinois").) The supreme court held that for double jeopardy to apply to resentencing, three "trial-like" factors must be present. (*Levin*, 157 Ill. 2d at 148.) The three factors are as follows:

> "(1) the sentencer's determination was guided by substantive standards and based on evidence introduced in a separate proceeding that formally resembled a trial; (2) the prosecution had to prove certain statutorily defined facts beyond a reasonable doubt; and (3) the discretion of the sentencer was restricted to precisely two sentencing alternatives." (*Levin*, 157 Ill. 2d at 144-45.)

These three factors amount to a procedure that takes on the aspects of a trial on the issue of guilt and, therefore, double jeopardy would be involved. (*Levin*, 157 Ill. 2d at 145.) However, in the case at bar, none of the three factors was present at the hearing where defendant was resentenced. In fact, the resentencing was based on the supervisory order of the supreme court, and the trial court had no discretion in the matter. The resentencing simply involved the trial court's formalizing defendant's new and harsher sentence. We hold that under the authority of *Levin* and *Burlington*, double jeopardy was not involved in this case and that, therefore, defendant's right against her being twice put in that state was not violated.[3]

Finally, defendant argues that, pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 1994)), she should have been given a credit of $5 a day against her $2,500 fine for the 29 days she spent in custody prior to sentencing, and for the 168 days she spent in custody between sentencing and resentencing pursuant to the supreme court order. Section 110—14 of the Code of Criminal Procedure of 1963 states:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on a conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110—14 (West 1994).

If defendant had properly submitted documentation to show that she did not receive the credit, she would have been entitled to it for the time she spent in prison between conviction and sentencing. (*People v. Smith* (1994), 258 Ill. App. 3d 261, 630 N.E.2d 147 (under certain conditions, where a defendant is incarcerated while awaiting execution of a sentence, the defendant is considered to be held on a "bailable offense" under the statute).) However, since defendant failed to demonstrate that she is entitled to such credit, we cannot say that the trial judge erred as to this issue.

We further hold, on the authority of *Smith*, that defendant is not entitled to $5-a-day credit for the 168 days that elapsed between her sentencing and resentencing because she was not incarcerated on a "bailable offense," given the fact that she was merely resentenced for a longer term.

---

[3]Also, it is well settled that the supreme court may compel compliance with the mandatory sentencing guidelines. *Limperis*, 86 Ill. 2d at 466, citing *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 416 N.E.2d 259; *People ex rel. Hanrahan v. Wilson* (1971), 48 Ill. 2d 30, 268 N.E.2d 23; *People ex rel. Ward v. Salter* (1963), 28 Ill. 2d 612.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and BURKE, J., concur.