THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID WALKER, Defendant-Appellant.

Third District   No. 75-263

Opinion filed December 21, 1976.

Robert Agostinelli and Michael Pelletier, both of State Appellate Defender's Office, of Ottawa, for appellant.

William D. Henderson, State's Attorney, of Macon (James E. Hinterlong, John X. Breslin, and Linda M. Vodar, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by the defendant from his conviction of armed robbery. The facts relevant to this appeal follow.

At approximately 3:30 p.m. on January 27, 1975, the defendant, David Walker, and five of his male and female friends set out for Dallas City, Illinois, from Streator, Illinois. The defendant drove because he was the only one of the group who owned a car. He was also the only adult in the group. The defendant was unaware of how to get to Dallas City, so the McMillan boys acted as his navigators. The defendant testified that they both appeared to have been drinking, and Brad McMillan, during his testimony, confirmed that he was drunk at the time of the incident.

After the journey was almost 1½ hours long, it was discovered that Brad McMillan had a handgun. The defendant testified that he was nervous but made no objection. Subsequently, they passed a Shell gas station in Bushnell, Illinois, and Brad McMillan told the defendant to turn down the street behind the station. Since the street was a dead end, the defendant turned the car around so that it faced the highway. Brian McMillan testified that, prior to their stopping, he heard no conversation between Brad, Walker and Harry Spicer. However, although recanting his testimony on re-cross-examination, Brad McMillan testified that, while the car was passing by the gas station, and before he told the defendant to pull onto the street behind the Shell station, he loudly announced his intention to rob the station. After the car was driven onto the side street, Brad McMillan and Spicer left the car and walked to the gas station.

The service station attendant testified that, at about 7:15 p.m., Spicer and McMillan entered the gas station and, at gun point, demanded all the money in the cash register. Spicer took the money out of the cash register while McMillan pointed the gun at the attendant. After Spicer and McMillan were out of sight, the attendant walked into the backroom and saw the defendant's car at the rear of the station. Although he could not tell whether the engine was running or if anyone occupied the car, he testified that he watched the car run a stop sign as it quickly pulled onto the highway.

The defendant testified that he had turned off the lights and engine while he parked on the side street and that, when Spicer and McMillan returned several minutes later, he did not notice whether they were carrying anything, only that they were walking at a brisk pace. When they entered the car, Brad McMillan told the defendant to leave. The defendant started the engine and drove south on highway 41. After only a

short distance, Spicer announced that he and Brad McMillan had robbed the gas station. Although Brad commanded the defendant to drive faster, the defendant continued to drive within the speed limit.

After the car pulled away, the gas station attendant called the Bushnell City Police to report the robbery. He described the vehicle to Officer Deems as a dirty brown or green 1970 Chrysler with a bent license plate, heading south on route 41. It was subsequently proven that the outer one-third of each side of the license plate was completely bent back over the center so that only the two centermost digits were readable. Deems, though in his uniform, drove his own vehicle, an unmarked 1974 Nova, in an attempt to overtake the defendant's vehicle. At New Philadelphia junction, Deems saw an automobile traveling at 50 m.p.h. fitting the description. He flashed his brights on the car to get a better look at it, backed off and radioed for assistance. Officer Deems continued to follow Walker's car.

The defendant testified that while driving he noticed that a car flashed its brights and continued to follow him for a long time. People in the back seat thought it was the police but there were no red lights or sirens to indicate that it was the police. Defendant therefore thought it was just kids from a small town "looking for some action." Walker further testified that as they entered the town of Adair the Nova was still following him so he tried to lose it. Officer Deems said that defendant's vehicle turned west on a side street in Adair. Deems continued past the street to the next one and also turned west. He drove parallel with defendant's for about a block until Walker's vehicle increased its speed and drove in what was described as a figure eight pattern. While the defendant drove in the swerving pattern, Spicer and Brad McMillan, apparently still thinking the police were following them, threw out the revolver and money bag.

After failing to rid himself of the car that had been following him, Walker pulled over to the side of the road. The Nova also stopped. Defendant exited the car still thinking it was kids looking for action until Officer Deems stated they were under arrest.

Officer Deems testified he did not force the vehicle to stop but that it stopped on its own. After everyone was out of the car he ordered them to place their hands on their heads and he waited for assistance to arrive. After the defendant and the others were taken into custody, the police officers searched the area in which the figure eight was completed by Walker's vehicle. A revolver and money bag were recovered along that route.

On March 1975, defendant was indicted for aiding and abetting Harry Spicer and Brad McMillan in the armed robbery of Bryan's Shell Station. Codefendants Spicer and McMillan pleaded guilty to the armed robbery in an earlier trial and were sentenced to not less than 4 years nor more

than 6 years imprisonment. At the defendant's trial, in the conference on instructions, the defendant tendered an instruction that "Mere presence at the scene of the crime or knowledge or negative acquiescence is not enough to hold a person accountable for the conduct of another." That instruction was denied by the trial court.

On May 15, 1975, the jury found the defendant guilty of armed robbery. The hearing in aggravation and mitigation revealed that Walker had no felony convictions. However, he had three traffic violations, including reckless driving, and one year probation for possession of cannabis. Defendant was sentenced to not less than 6 nor more than 12 years imprisonment. The trial court was aware that Spicer and McMillan each received a sentence of not less than 4 nor more than 6 years imprisonment but held defendant to a higher degree of responsibility principally because of his age.

There are three issues presented for review. First, was the defendant proven guilty of armed robbery beyond a reasonable doubt. Secondly, did the trial court err in denying the defendant's tendered instruction. And thirdly, is the sentence excessive in light of the sentences given to the other participants.

■■ To convict a person as an aider and abetter, the State must establish beyond a reasonable doubt that (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) the defendant's participation took place before or during the offense; and (3) the defendant's participation was accompanied by the concurrent, specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c); *People v. Tillman* (4th Dist. 1971), 130 Ill. App. 2d 743, 265 N.E.2d 904; *People v. Ramirez* (1st Dist. 1968), 93 Ill. App. 2d 404, 236 N.E.2d 285.) Criminal responsibility can not be established through guilt by association. (*People v. Ramirez* (1st Dist. 1968), 93 Ill. App. 2d 404, 236 N.E.2d 284.) The defendant's mere presence in and around the scene of the crime is not culpable, and even the defendant's consent to or knowledge that the crime is being committed does not constitute aiding or abetting. (*In re Dugan* (4th Dist. 1972), 9 Ill. App. 3d 58, 291 N.E.2d 303.) And when intent is an element to be proved, it is limited to a conscious objective or purpose to accomplish the desired result. (*People v. Kessler* (2nd Dist. 1973), 11 Ill. App. 3d 321, 296 N.E.2d 631.) However, intent is to be inferred from the words and actions of the defendant, as well as the surrounding circumstances. (*People v. Uselding* (1st Dist. 1969), 107 Ill. App. 2d 305, 247 N.E.2d 35.) Moreover, "when a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities." (*People v. Lobb* (1959), 17 Ill. 2d 287, 294, 161

N.E.2d 325, 329. Accord, *People v. Spagnolia* (1961), 21 Ill. 2d 455, 173 N.E.2d 431.) Since the circumstantial evidence in this case is sufficient to support a finding of guilty beyond a reasonable doubt, we can not upset the finding of the jury which sat through the trial and observed the witnesses as they testified.

■■ Concerning the issue on the defendant's tendered instruction, the law is clear. Where the defendant has presented a theory of the case and evidence has been presented relating to such a theory, the defendant is entitled to a jury instruction as to the law applicable to the facts underlying the defense. (*People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573; *People v. Kucala* (1st Dist. 1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.) However, the refusal of a tendered instruction is not error if the essence of the instruction is covered by other instructions which are given. (*People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573.) The jury instruction tendered by the defendant and refused by the court was not an Illinois Pattern Jury Instruction. However, the following Illinois Pattern Jury Instructions were presented to the jury:

> "The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." (IPI Criminal No. 2.03.)
>
> "A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime." (IPI Criminal No. 5.03.)

From these instructions the jury is informed that the defendant is innocent unless the State proves beyond a reasonable doubt that, before or during the offense, the defendant did some affirmative act which assisted the planning or commission of the offense with the accompanying intent to assist, in some fashion, the perpetration of the offense. Therefore, these instructions encompass the theory of defense presented in this case, and it was not error for the trial court to refuse to give the instruction tendered by the defendant.

It is not specifically argued by the defendant that the sentence imposed by the trial court is excessive for the crime, but only that there is no reason for the difference between the defendant's sentence and those of his co-

felons. The trial court considered the facts in the case. The defendant was 21 years old at the time of the offense while the others were only 16 years old. Furthermore, the defendant was driving his own automobile and, therefore, the trial court could reasonably conclude that the defendant should have exercised more control over the others in the group. At least he should have considered exercising some control, especially since he was aware they had a gun and were drinking. In addition, the trial court considered the defendant's prior record, as well as considering the fact that the defendant lived with his mother and contributed to her support. The defendant had three traffic violations. These were driving without a license, speeding and reckless driving. He was also convicted of possession of cannabis, for which he was fined $100 and placed on probation for one year. The trial court concluded that the defendant's record evidenced his "disregard for the law."

■■ It is clearly the law that, where no factual basis appears in the record to support the disparity in sentencing, the sentence of the defendant may be reduced. (*People v. Hatfield* (4th Dist. 1972), 5 Ill. App. 3d 996, 284 N.E.2d 708.) However, we agree with the trial court that there is a sufficient factual basis for the difference in the sentences, and we refuse to reduce the defendant's sentence.

Accordingly, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.