IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-40977

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DAVID SANDOVAL-RUIZ

Defendant - Appellant

Appeal from the United States District Court for the Southern District of
Texas

Before HIGGINBOTHAM and STEWART, Circuit Judges.[*]

PATRICK E. HIGGINBOTHAM, Circuit Judge:

David Sandoval-Ruiz was deported in 2005 and caught in 2007 attempting
to reenter by taxi in Laredo, Texas. He later pled guilty to attempted illegal
reentry. The Presentence Report recommended that Sandoval-Ruiz's base
offense level of 8 be increased by 16 levels because of a prior drug-trafficking
conviction in accordance with the United States Sentencing Guidelines.[1]
Defendant's prior conviction was for one count of delivery and one count of
possession with intent to deliver more than 5,000 grams of marijuana in

---

[*] This case is being decided by a quorum. 28 U.S.C. § 46(d).

[1] U.S.S.G. § 2L1.2(b)(1)(A)(i).

violation of the Illinois Cannabis Control Act.[2] Over Sandoval-Ruiz's objection, the district court adopted the Presentence Report that provided for a Guideline sentence range of 46 to 57 months imprisonment. The court sentenced him to 46 months imprisonment. Sandoval-Ruiz appeals his sentence.

I

Sandoval-Ruiz argues that the district court erred by applying the 16-level enhancement because an Illinois conviction for delivery of marijuana is not a drug-trafficking offense under the Guidelines. More specifically, he argues that by pleading guilty to the substantive delivery offense it is possible that his conviction may have been based, not on any delivery by him, but one attributed to him under Illinois' law of parties.[3] He argues that the Illinois accountability statute is broader than the federal aider and abetter statute, making it theoretically possible that his actual conduct falls outside the scope of a drug-trafficking offense in the federal statute.

Sandoval-Ruiz preserved the sentence-enhancement issue by objecting at the sentencing hearing. This Court reviews a preserved application and interpretation of the Guidelines de novo.[4]

---

[2] 720 ILL. COMP. STAT. 550/5(g) (West 1999).

[3] This Court could not independently determine whether Sandoval-Ruiz's offense was based on principal liability or law-of-parties liability because Shepard-approved documents, such as the terms of the plea agreement or a transcript of the plea colloquy between judge and defendant, were not made part of the record. See Shepard v. U.S., 544 U.S. 13, 26 (2005). The record included the indictment, which did not, and was not required to, include accountability as an element. See U.S. v. Creech, 408 F.3d 264, 273 (5th Cir. 2005). Regardless, as we explain supra, it is of no moment for purposes of enhancement in this case whether Sandoval-Ruiz's conviction under Illinois law was based on principal liability or accountability liability.

[4] U.S. v. Charon, 442 F.3d 881, 887 (5th Cir. 2006).

II

Under Taylor v. United States,[5] when determining whether a predicate state conviction qualifies as a conviction for purposes of sentence enhancement under federal law, courts apply a strict categorical approach and "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." When an indictment is silent as to the offender's actual conduct, as is the case here, we must ensure that the "least culpable act constituting a violation of that statute constitutes" a drug trafficking offense under the Guidelines.[6] Looking at the Illinois statute in this case, we agree with the government that the statute has "the basic elements" of and does not encompass activity broader than the federal definition of a drug-trafficking offense.[7] The statutory definition of manufacture or delivery of cannabis in Illinois makes it a felony for:

> any person knowingly to manufacture, deliver, or possess with intent to deliver or manufacture cannabis in an amount exceeding 5,000 grams.[8]

The Guidelines define a drug-trafficking offense as:

> [a]n offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.[9]

---

[5] 495 U.S. 575, 600 (1990).

[6] U.S. v. Gonzalez-Ramirez, 477 F.3d 310, 316 (5th Cir. 2007).

[7] Taylor, 495 U.S. at 599.

[8] 720 ILL. COMP. STAT. 550/5.

[9] U.S.S.G. § 2L1.2(b)(1)(A)(i).

By a side-by-side reading of the Illinois offense's statutory definition, we find its elements fit comfortably within the federal definition of a drug-trafficking offense.

Before Gonzales v. Duenas-Alvarez,[10] as we read Taylor we needed to look no further than the Illinois statute. Once we determined the state statute was within the federal offense, our only concern was whether the defendant had a "previous conviction" violating the state statute, not how the defendant "committed" the offense.[11]

### III

The Supreme Court recently expanded on Taylor by indulging a challenge to a sentence enhancement for a prior state crime based on the scope of the state's aider and abetter law. In Duenas-Alvarez,[12] the defendant, a resident alien, was found removable from the United States based on a prior California conviction that qualified as a "theft offense" under immigration law. The defendant challenged the removal, arguing that the breadth of California's aider and abetter law results in the California theft statute reaching "beyond generic theft."[13] The Court reviewed California caselaw and determined that the State's accountability law does not result in California criminalizing "conduct that most other States would not consider 'theft.'"[14]

After Duenas-Alvarez, we are obligated to review whether Illinois accountability law exposes a defendant to liability as a principal for conduct broader than that encompassed by the federal drug-trafficking offense. Any

---

[10] 549 U.S. 183 (2007).

[11] Taylor, 495 U.S. at 600.

[12] 549 U.S. at 185.

[13] Id. at 190.

[14] Id. at 191.

difference between the state statute and federal law[15] must rise to the level of creating a "realistic possibility, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [federal] definition of a crime."[16] We are not persuaded that the Illinois accountability law is broader than federal law.

Sandoval-Ruiz concedes that the federal definition of drug-trafficking offense includes aiding and abetting. The Guideline Comments specify that prior drug-trafficking offenses based on "aiding, abetting, conspiring, and attempting to commit such offenses" count as offenses for purposes of sentence enhancement.[17] The Comments are in keeping with the modern trend that "the law treats aiders and abettors during and before the crime the same way it treats principals."[18]

Sandoval-Ruiz urges instead that Illinois' accountability law is broader than federal aiding and abetting law because it subjects a person to liability who "solicits" the offense.[19] The Illinois accountability statute provides that a person is legally accountable for the conduct of another when:

> Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits,

---

[15] Duenas-Alavarez compared California's theft law, including the effect of its aider and abetter law, to the reach of what most other states consider theft. Id. at 190-94. The Court was concerned in that case with "generic theft" because the federal statute did not define a "theft offense." See 8 U.S.C. § 1101(a)(43)(G). Here, we compare Illinois law to federal law, not "generic" state law, because "drug trafficking offense" is specifically defined in the federal statute. See U.S. v. Gonzales, 484 F.3d 712, 716 (5th Cir. 2007).

[16] Duenas-Alvarez, 549 U.S. at 193.

[17] U.S.S.G. § 2L1.2, cmt. 5.

[18] Duenas-Alvarez, 549 U.S. at 190.

[19] 720 ILL. COMP. STAT. § 5/5-2.

aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.[20]

The federal aiding and abetting statute provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.[21]

We agree with the district court judge that there is no realistic probability that Illinois would apply the statute to conduct outside the scope of the federal statute. The face of the statute itself supports this point. As in the federal statute, the Illinois statute requires the commission of the substantive offense, the intent to promote the offense, and some form of participation in the offense. Unlike the federal statute, participation may be in the form of solicitation. Solicitation is further defined as "to command, authorize, urge, incite, request, or advise another to commit an offense."[22] The practical meaning of this list of verbs does not differ from the practical meaning of the federal list in such a way as to make the Illinois statute more broad. For instance, a defendant under federal law found to have factually "requested" or "advised" a crime could reasonably be found guilty of having "induced" or "counseled" the crime.

A rule that defendants may escape federal sentence enhancement by pleading guilty to substantive crimes in states with accountability statutes that do not perfectly map the federal statute would exaggerate the protections of Taylor and Duenas-Alvarez, which require a "realistic possibility" the defendant was convicted for conduct less culpable than required by the Guidelines.

Our review of Illinois caselaw confirms that the State's accountability statute only includes conduct well within the ambit of federal accountability law.

---

[20] Id.

[21] 18 U.S.C. § 2(a).

[22] 720 ILL. COMP. STAT. § 5/2-20.

In People v. Stanciel,[23] the Illinois Supreme Court held that two mothers who repeatedly arranged for their children to be in the custody of physically abusive men who ultimately killed the children were guilty of the murder of their children on the basis of accountability. But, the Court required proof of both participation and intent of the mothers. Regarding intent, the Court held the defendant must possess the same intent as required in the substantive crime, explaining that "[a]ccountability, tied as it is to the crime charged, must comport with the requirements of that crime."[24]

Sandoval-Ruiz also claims that Illinois caselaw does not require participation, but mere approving presence, to be held liable under an accountability theory, pointing to People v. Martinez.[25] We disagree. The court there held that "mere presence at the scene of a crime and knowledge that a crime is being committed are not alone sufficient to establish guilt on an accountability theory."[26] While Illinois does allow an "inference of accountability" from approving presence, the facts must additionally contain "evidence of conduct showing a design on defendant's part to aid in the offence."[27] Martinez had significantly participated. She transferred paper and phone messages between drug suppliers, entered the car of a drug supplier, and transferred the drugs from the supplier in the car to one on the street.[28] The Illinois' accountability law is not meaningfully broader than federal law.

IV

---

[23] 606 N.E.2d 1201, 1210 (Ill. 1992).

[24] Id.

[25] 662 N.E.2d 473 (Ill. App. 1st Dist. 1996).

[26] Id. at 476.

[27] Id. (emphasis added).

[28] Id. at 476-77.

United States v. Gonzalez[29] is not to the contrary. Gonzalez's sentence was enhanced due to a prior drug-trafficking offense for violating Texas' delivery of a controlled substance law.[30] We vacated the sentence, holding that because the Texas statutory definition of delivery of a controlled substance includes offering to sell, it encompasses activity that does not fall within the Guideline's definition of a drug-trafficking offense.[31] Unlike the Texas statute, the Illinois statute in this case does not allow conviction based on a mere solicitation or offer to sell without commission of the delivery offense. The word "solicit" in the accountability law of Illinois does not create a separate offense based on a solicitation or an offer to sell. As used, solicit refers to conduct that subjects a defendant to liability for the substantive delivery offense if the other elements of accountability, including intent and commission of the offense, are satisfied.[32] In contrast, statutes criminalizing an offer or solicitation create separate crimes from the substantive delivery offense that are complete upon the solicitation, do not require commission of the delivery offense, and do not rest upon imputation of the acts of the principal to the solicitor. Whether a separate offense of criminal solicitation would support enhancement under the Guidelines is not presented and we do not reach that question.[33] AFFIRMED.

---

[29] 484 F.3d 712 (5th Cir. 2007).

[30] Id. at 714.

[31] Id. at 714-15.

[32] See People v. Hairston, 263 N.E.2d 840, 847-48 (Ill. 1970) ("[P]roof that defendant had commanded or requested the principal crimes with the requisite intent was all that was necessary to establish his guilt of the crimes of solicitation; to establish his guilt of the principal crimes [under accountability] it was necessary to prove the additional fact that the principal crimes had in fact been committed.").

[33] Our sister circuits have addressed this distinct issue, see, e.g., U.S. v. Aguilar-Ortiz, 450 F.3d 1271 (11th Cir. 2006); U.S. v. Cornelio-Pena, 435 F.3d 1279 (10th Cir. 2006); U.S. v. Shumate, 329 F.3d 1026 (9th Cir. 2003); U.S. v. Dolt, 27 F.3d 235 (6th Cir. 1994).