IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-40893

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MIGUEL CORDOBA-POSOS,
also known as Miguel Angel Collazo-Barba

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. 5:07-CR-511-1

Before KING, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Miguel Cordoba-Posos pleaded guilty to reentering the United States after being removed subsequent to a conviction of an aggravated felony in violation of 8 U.S.C. § 1326. The district court sentenced him to forty-six months of imprisonment, including an enhancement pursuant to section 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines Manual for a previous conviction of a felony crime of violence. Cordoba-Posos appeals his

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence, asserting that the district court erred by concluding that his previous felony conviction of residential burglary under chapter 38, section 19-3 of the Illinois Criminal Code was a conviction of a crime of violence. For the following reasons, we AFFIRM.

## I. BACKGROUND

In 1986, Miguel Cordoba-Posos, then known as Miguel Angel Collazo-Barba, was convicted of residential burglary under chapter 38, section 19-3 of the Illinois Criminal Code ("section 19-3" or the "Illinois residential burglary statute"), ILL. REV. STAT., ch. 38, ¶ 19-3 (1983).[1] The indictment charged that he "knowingly and without authority enter[ed] the dwelling place of Daniel Andrade with the intent to commit therein a theft." A certified copy of this indictment and a "Statement of Conviction / Disposition," showing that Cordoba-Posos was found guilty and sentenced on August 28, 1986, are the only record evidence of his state court conviction.

Cordoba-Posos was subsequently removed from the United States on August 9, 1989. After Cordoba-Posos reentered the United States, he was apprehended on March 25, 2007, and charged by indictment with one count of being found in the United States without lawful consent after being removed following a conviction of an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). Cordoba-Posos pleaded guilty.

The presentence report (the "PSR") assessed a base offense level of eight. Because of Cordoba-Posos's previous felony conviction under the Illinois residential burglary statute, the PSR recommended a sixteen-level, "crime-of-

---

[1] This statute was later amended and is now codified at 720 ILL. COMP. STAT. 5/19-3 (2008).

violence" enhancement under § 2L1.2(b)(1)(A)(ii) of the 2006 version of United States Sentencing Guidelines Manual (the "Sentencing Guidelines" or "U.S.S.G."). Crediting Cordoba-Posos three levels for acceptance of responsibility, the PSR calculated a total offense level of twenty-one. Combining that offense level with his criminal history category of III, the PSR calculated a guideline range of forty-six to fifty-seven months of imprisonment.

Cordoba-Posos objected to the PSR. He argued that the court should not apply the sixteen-level enhancement because his conviction under the Illinois residential burglary statute did not qualify as a "burglary of a dwelling," the relevant crime of violence listed in the commentary to § 2L1.2. See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The district court overruled Cordoba-Posos's objection, applied the enhancement, and sentenced him to forty-six months of imprisonment and three years of supervised release.

Cordoba-Posos filed a timely notice of appeal on September 12, 2007. We exercise jurisdiction over his appeal from the district court's final judgment of conviction and sentence pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

On appeal, Cordoba-Posos asserts that the sixteen-level enhancement was improper because his previous felony conviction of residential burglary did not qualify as a crime of violence under § 2L1.2(b)(1)(A)(ii). First, he argues that the Illinois residential burglary statute in effect at the time of his conviction was applied to burglary of uninhabited structures that do not qualify as "dwellings" within the generic, contemporary meaning of burglary of a dwelling. Second, he argues that chapter 38, section 5-2 of the Illinois Criminal Code ("section 5-2" or

the "Illinois accountability statute"), ILL. REV. STAT., ch. 38, ¶ 5-2 (1983),[2] held defendants accountable for the principal offense for soliciting, agreeing to aid another person in the planning of, or mere approving presence during the principal offense, which is more inclusive than the generic, contemporary meaning of criminal liability, as construed according to the federal law.

Where, as here, the defendant objects at sentencing to the district court's interpretation or application of the Sentencing Guidelines, thus preserving the issue for appeal, we review de novo. See United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008); United States v. Juarez-Duarte, 513 F.3d 204, 211 (5th Cir. 2008) (per curiam); United States v. Santiesteban-Hernandez, 469 F.3d 376, 378 (5th Cir. 2006).

Section 2L1.2(b)(1)(A)(ii) provides a sixteen-level enhancement to a defendant's base offense level when that defendant was previously removed subsequent to a conviction of a crime of violence.[3] Application note one of the commentary to § 2L1.2 defines "burglary of a dwelling" as a qualifying crime of violence.[4] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Moreover, application note five provides that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to

---

[2] This statute is now codified at 720 ILL. COMP. STAT. 5/5-2 (2008).

[3] It is of no moment whether Cordoba-Posos was deported because of his conviction. See U.S.S.G. § 2L1.2 cmt. n.1(A)(ii) ("A defendant shall be considered to be deported after a conviction if the deportation was subsequent to the conviction, regardless of whether the deportation was in response to the conviction.").

[4] The government does not argue that Cordoba-Posos's conviction under section 19-3 qualifies under the catch-all category of "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

commit such offenses." U.S.S.G. § 2L1.2 cmt. n.5. Thus, the Sentencing Guidelines are consistent with the modern trend that "treats aiders and abettors during and before the crime the same way it treats principals." United States v. Duenas-Alvarez, 549 U.S. 183, 190 (2007); see also 18 U.S.C. § 2(a) (creating liability as a principal for whoever "aids, abets, counsels, commands, induces or procures" commission of an offense (the "federal aider and abettor law")).

To determine whether a conviction under the Illinois residential burglary statute constitutes a conviction of burglary of a dwelling, we employ the categorical approach developed by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990). See United States v. Carbajal-Diaz, 508 F.3d 804, 807 (5th Cir. 2007). For crimes of violence enumerated in the commentary to § 2L1.2, such as burglary of a dwelling, we define the potentially equivalent crime of conviction by reference to its statutory definition. See, e.g., United States v. Lopez-Deleon, 513 F.3d 472, 474–75 (5th Cir. 2008). We then compare that crime of conviction to the generic, contemporary and uniform meaning of the enumerated crime of violence using a common sense approach to ensure that the defendant was found guilty of, at minimum, the elements of that generic crime. See Taylor, 495 U.S. at 598 (interpreting "burglary" by reference to its "generic, contemporary meaning"); United States v. Murillo-Lopez, 444 F.3d 337, 339–40

(5th Cir. 2006) (same for "burglary of a dwelling").[5] The Supreme Court in Duenas-Alvarez recently clarified that:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

549 U.S. at 193.

With this framework in mind, we compare residential burglary under section 19-3 to the generic, contemporary meaning of burglary of a dwelling. The generic meaning is well-settled in this court. In Murillo-Lopez, this court held that burglary of a dwelling "includes the elements of generic burglary as stated in Taylor," 444 F.3d at 345, which are "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," Taylor, 495 U.S. at 598. In addition, the Murillo-Lopez court added that "a building or other structure" includes "at a minimum, tents or vessels used for human habitation." 444 F.3d at 344–45. Thus, burglary of a dwelling for purposes of a sentencing enhancement under § 2L1.2(b)(1)(A)(ii) is the unlawful

---

[5] Where the prior crime of conviction encompasses a range of different criminal behaviors, some of which are crimes of violence and some of which are not, we narrow the prior crime's definition by reference to the charging documents, the plea or verdict, the plea colloquy, the plea agreement, and any express factual findings by the state court that the defendant admitted. See Carbajal-Diaz, 508 F.3d at 809 n.7; Murillo-Lopez, 444 F.3d at 339–40. We do not, however, rely on the "PSR's characterization of a defendant's prior offense." United States v. Garza-Lopez, 410 F.3d 268, 274 (5th Cir. 2005) (citing Shepard v. United States, 544 U.S. 13, 16 (2005)).

or unprivileged entry into, or remaining in, a building, structure, tent, or vessel used for human habitation, with intent to commit a crime. See id.; United States v. Castillo-Morales, 507 F.3d 873, 875 (5th Cir. 2007) (defining term dwelling in phrase burglary of a dwelling as "a structure, tent, or vessel where someone lives"); see also United States v. Ortega-Gonzaga, 490 F.3d 393, 395 (5th Cir. 2007) (recognizing that Murillo-Lopez resolved definition of burglary of a dwelling).

Having defined the generic, contemporary crime of burglary of a dwelling, we next turn to Cordoba-Posos's assertions that the Illinois residential burglary and accountability statutes criminalize conduct outside of this generic meaning.

A.   The meaning of "dwelling place of another" under the Illinois residential burglary statute.

Cordoba-Posos claims that the district court erred in applying the crime-of-violence enhancement pursuant to § 2L1.2(b)(1)(A)(ii) because the Illinois residential burglary statute criminalized burglary of uninhabited structures that do not qualify as dwellings within the generic, contemporary meaning of burglary of a dwelling. At the time of Cordoba-Posos's conviction, section 19-3 defined residential burglary as follows: "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." ILL. REV. STAT., ch. 38, ¶ 19-3 (1983) (emphasis added); see People v. Bales, 483 N.E.2d 517, 519 (Ill. 1985); People v. Sexton, 455 N.E.2d 884, 886 (Ill. App. Ct. 1983). A year before Cordoba-Posos was convicted, the Illinois Supreme Court interpreted section 19-3's phrase "dwelling place of another" to require "that the structure be one used by another as a residence or living quarters in which the owners or occupants

7

actually reside or, if absent, intend within a reasonable period of time to reside." Bales, 483 N.E.2d at 521. Incorporating the definition of "dwelling" found in chapter 38, section 2-6 of the Illinois Criminal Code ("section 2-6"), ILL. REV. STAT., ch. 38, ¶ 2-6 (1983), the court in Bales determined that the term dwelling within the phrase dwelling place of another meant "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." 483 N.E.2d at 519; see Sexton, 455 N.E.2d at 886 (same). Noting, however, that the phrase dwelling place of another requires a narrower definition than the term dwelling, the court concluded that "whether a structure is a dwelling place of another depends on the purpose for which it is used, rather than the nature of the structure." Bales, 483 N.E.2d at 520–21. As such, it held that section 19-3 applied only when the structure was actually used for human residence or would be within a reasonable period of time. Id. at 521. Thus, residential burglary under section 19-3 requires all of the elements of the generic, contemporary definition of burglary of a dwelling—in particular, a person's present or intended residency in the dwelling. Compare Murillo-Lopez, 444 F.3d at 344–45, with Bales, 483 N.E.2d at 521.

Cordoba-Posos argues that notwithstanding the Illinois Supreme Court's interpretation, lower Illinois courts were allowing the prosecution and conviction of defendants under section 19-3 for burglarizing uninhabited structures—i.e., garages and other buildings unoccupied or abandoned at the time of the breaking and not intended for human residence within a reasonable period of time. Thus, Cordoba-Posos contends section 19-3 was applied to nongeneric crimes.

Cordoba-Posos bears the burden of showing that there is a "realistic probability" that section 19-3 was applied to convict a defendant of residential burglary of an uninhabited structure. See Duenas-Alvarez, 549 U.S. at 193. To meet this burden, Cordoba-Posos points this court to three Illinois intermediate appellate court cases, section 2-6's text, the 1987 amendments to that section, and the statements of an Illinois state senator related to those amendments.

We conclude that Cordoba-Posos's submissions fall short of the necessary showing of a realistic probability that section 19-3 was applied to conduct falling outside of the generic meaning of burglary of a dwelling. The three Illinois intermediate appellate court cases cited by Cordoba-Posos fail to meet his burden. See People v. Silva, 628 N.E.2d 948, 952 (Ill. App. Ct. 1993) (burglary of "unoccupied first-floor and garden apartments undergoing renovation"); People v. Benge, 552 N.E.2d 1264, 1265 (Ill. App. Ct. 1990) (burglary of cabin used "once a week every week"); People v. Pearson, 538 N.E.2d 1202, 1202–03 (Ill. App. Ct. 1989) (burglary of "residential rental property" one day after eviction of prior tenant and three days before new tenants were scheduled to move in). As Cordoba-Posos admits in his brief and conceded during oral argument, none of these cases involved a defendant convicted of residential burglary of an uninhabited structure. Without citing an actual example of a nongeneric conviction, these three cases do nothing more than suggest the application of the Illinois residential burglary statute to uninhabited structures by referencing the statements of the Illinois state senator related to the 1987 amendments to section 2-6.

The language of section 2-6 in 1986, its subsequent amendments, and the state senator's statements, however, fail to raise a realistic probability that the

Illinois residential burglary statute was applied to uninhabited structures. Although the definition of dwelling contained in the 1986 version of section 2-6 arguably encompassed uninhabited structures,[6] prior to Cordoba-Posos's conviction, the Illinois Supreme Court in Bales expressly narrowed that definition when construing the meaning of the phrase dwelling place of another in section 19-3. That narrower definition was codified as a new subsection of section 2-6 by the 1987 amendments. The text of post-amendment subsection 2-6(b)[7] mirrors the definition announced in Bales, and later Illinois case law confirms that the amendments codified Bales's holding. See People v. Taylor, 802 N.E.2d 402, 404–05 (Ill. App. Ct. 2003) (holding that the Bales court's definition of dwelling was codified as subsection 2-6(b)).

As evidence that the amendments were intended to correct actual cases wherein defendants were prosecuted under section 19-3 for residential burglary of uninhabited structures, Cordoba-Posos directs this court to Illinois State Senator Sangmeister's statements during the debate of the 1987 amendments

---

[6] We do not decide this issue.

[7] The 1987 amendment changed section 2-6 to read:
"Dwelling". (a) Except as otherwise provided in subsection (b) of this Section, "dwelling" means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence.
(b) For the purposes of Section 19-3 of this Code, "dwelling" means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside.

ILL. REV. STAT., ch. 38, ¶ 2-6 (1987). As noted in the text, Bales defined dwelling place of another in section 19-3 to mean that "the structure be one used by another as a residence or living quarters in which the owners or occupants actually reside or, if absent, intend within a reasonable period of time to reside." 483 N.E.2d at 521.

to section 2-6. Without referencing specific examples, Senator Sangmeister lamented that Illinois was prosecuting people for residential burglary for breaking into uninhabited structures such as garages.[8] The Supreme Court's holding in Duenas-Alvarez requires more to show a realistic probability of a nongeneric application. See 549 U.S. at 193 (holding that defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues"). The nonspecific concerns of a single state senator are insufficient to show a realistic probability that Illinois applied section 19-3 to conduct that falls outside the generic definition of burglary of a dwelling where Cordoba-Posos has been unable to produce a single case in which a defendant was convicted of a nongeneric burglary of a dwelling. See United States v. Balderas-Rubio, 499 F.3d 470, 473–74 (5th Cir. 2007) (concluding that an example of prosecution

---

[8] During a legislative debate, Senator Sangmeister explained the 1987 amendments as follows:

> Yes, it was even brought to our attention by the Illinois Supreme Court in a number of cases that . . . there should be a better definition to the dwelling house. We are having people prosecuted for residential burglary for breaking into . . . unoccupied buildings such as garages. Therefore, very simply, we have redefined dwelling to mean a house, apartment, mobile home, trailer or other living quarters in which at the time of the alleged offense the owners or occupants actually reside in or . . . in their absence intend within a reasonable period of time to reside. So that still covers, in my opinion, the vacation home; you intend to reside in that and if you burglarize that, you would still be committing residential burglary, but it tightens up some of these cases where we got old abandoned buildings around our garages and stuff that . . . would not be residential burglary.

84th Ill. Gen. Assem., Senate Proceedings, June 18, 1986, at 66–67 (statements of Senator Sangmeister), as quoted in Silva, 628 N.E.2d at 951.

under defendant's proposed meaning is necessary to meet burden under Duenas-Alvarez).

Overall, the meaning of burglary of the dwelling place of another under the Illinois residential burglary statute is consistent with the generic, contemporary meaning of burglary of a dwelling; thus, a conviction of residential burglary qualifies for the crime-of-violence enhancement pursuant to § 2L1.2(b)(1)(A)(ii). Moreover, Cordoba-Posos has failed to show that there is a realistic probability that any defendant was prosecuted under section 19-3 for a nongeneric residential burglary of an uninhabited structure. We, therefore, conclude that the district court did not err when it denied Cordoba-Posos's objection on this basis.

B.     The extent of criminal liability under the Illinois accountability statute.

Cordoba-Posos contends that the district court erred by enhancing his sentence because the Illinois accountability statute results in liability as a principal for residential burglary in situations that are beyond the generic, contemporary understanding of burglary of a dwelling or of criminal liability for another person's conduct. Comparing the Illinois accountability statute and Illinois case law interpreting it to the Sentencing Guidelines and the federal aider and abettor law, he bases his contention on two grounds: (1) that the Illinois accountability statute creates liability for residential burglary without requiring the defendant's entry into a dwelling place of another and (2) that it

creates liability based on solicitation of, agreeing to aid in the planning of, or mere approving presence during the commission of a residential burglary.[9]

In Duenas-Alvarez, the Supreme Court reviewed an order of removal pursuant to 8 U.S.C. § 1227(a)(2)(A) based on a prior conviction of a theft offense under California law. 549 U.S. at 189. The defendant claimed that California's theft statute criminalized a wider variety of conduct than is included in the generic, contemporary definition of theft because that statute creates liability beyond generic aiding and abetting liability. Id. at 190. Applying the categorical approach established in Taylor, the Court concluded that aider and abettor liability under the theft statute does not result in liability for "conduct that most other States would not consider 'theft.'" Duenas-Alvarez, 549 U.S. at 186, 191. Thus, after Duenas-Alvarez, this court must consider whether the Illinois accountability statute renders Cordoba-Posos liable as a principal for "conduct that falls outside the generic definition of [burglary of a dwelling]"; however, as discussed earlier, to succeed in his challenge, Cordoba-Posos must show a realistic probability that Illinois would apply its accountability statute in that way. Id. at 193.

We begin our analysis by examining the Illinois accountability statute in order to determine "the least culpable act" that would constitute a violation of

---

[9] Defendant does not argue that, nor do we decide whether, the appropriate analysis in this case would be to compare Illinois's accountability statute to, inter alia, the similar criminal liability statutes of the other states to determine the generic, contemporary meaning of principal liability for residential burglary. Cf. Duenas-Alvarez, 549 U.S. at 190–94 (comparing liability under California's theft statute to other states' liability statutes). Because Cordoba-Posos bases his argument solely on a comparison of the Illinois accountability statute to federal law, we address only this argument.

the Illinois residential burglary statute. See United States v. Gonzalez-Ramirez, 477 F.3d 310, 316 (5th Cir. 2007).

Under the Illinois accountability statute,

> A person is legally accountable for the conduct of another when . . . [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.

ILL. REV. STAT., ch. 38, ¶ 5-2. Illinois defines to "solicit" as "to command, authorize, urge, incite, request, or advise another to commit an offense." ILL. REV. STAT., ch. 38, ¶ 2-20.[10] The government does not dispute that Illinois has used the theory of accountability to hold defendants liable as principals for burglary. See, e.g., People v. Johnson, 530 N.E.2d 627, 631–32 (Ill. App. Ct. 1988); People v. Pleshko, 458 N.E.2d 975, 983–84 (Ill. App. Ct. 1983). Thus, a defendant could be charged with residential burglary as a principal, if, either before or during the commission of the offense and with the intent to promote it, the defendant advised another person to knowingly and without authority enter the dwelling place of another with the intent to commit therein a felony or theft or agreed to aid the other person in planning that offense.

Here, the indictment evidences that Cordoba-Posos was charged with and convicted of residential burglary; however, it does not reveal whether the government's theory of liability was Cordoba-Posos's commission of the residential burglary or was based on his accountability for another person's

---

[10] This statute is now codified at 720 ILL. COMP. STAT. 5/2-20 (2008).

commission of that offense.[11] Under Illinois law, the defendant is indicted for the principal crime even if the charges are brought under a theory of liability based on the Illinois accountability statute. See People v. Stanciel, 606 N.E.2d 1201, 1209 (Ill. App. Ct. 1992) (holding that "[i]ndividuals are not charged with the offense of accountability[;] [i]nstead, they may be charged [with the principal crime at issue], with their guilt established through the behavior which makes them accountable for the crimes of another"). The indictment, however, cannot charge the defendant with accountability for the principal crime unless the government intends to prove all of the elements of the principal crime. If, to the contrary, the government intends to prove solicitation of an inchoate principal offense, it must allege solicitation under Illinois's separate solicitation statute. See People v. Hairston. 263 N.E.2d 840, 847–48 (Ill. 1970) (holding that accountability under section 5-2 is distinct from separate offense of solicitation because government is required to prove that principal crime had been committed); see also United States v. Creech, 408 F.3d 264, 273 (5th Cir. 2005).[12]

With this legal foundation, we easily dispose of Cordoba-Posos's first argument—that the Illinois accountability statute does not conform to the generic meaning of burglary of a dwelling because it allows a defendant to be convicted as a principal under the Illinois residential burglary statute without

---

[11] Relevant state court documents that might clarify this issue, if any exist, were not made part of the record.

[12] The facts of this case do not raise the issue of a conviction of an inchoate solicitation offense, so we need not and do not address the question of whether the crime of solicitation would satisfy the requirements of § 2L1.2. Numerous cases cited by the parties reveal that other courts of appeals have split on this issue. Compare United States v. Aguilar-Ortiz, 450 F.3d 1271 (11th Cir. 2006), and United States v. Dolt, 27 F.3d 235 (6th Cir. 1994) (analyzing U.S.S.G. §§ 4B1.1, 4B1.2(b)), with United States v. Cornelio-Pena, 435 F.3d 1279 (10th Cir. 2006).

entering the dwelling place of another. See People v. McKinney, 631 N.E.2d 1281, 1289–90, 1292 (Ill. App. Ct. 1994) (upholding burglary conviction under accountability theory where defendant did not enter property). This argument ignores the basic idea of accountability—that the defendant is liable for another person's entry. Because Cordoba-Posos was indicted with and convicted of the principal offense, either he or a person for whom he was legally accountable under Illinois law entered into the dwelling place of Daniel Andrade. Cordoba-Posos cites no Illinois case in which a defendant was convicted as a principal based on an accountability theory without evidence that another person for whom the defendant was legally accountable committed all of the elements of residential burglary, including entry. Moreover, he presents no other reason to conclude that such liability is inconsistent with the generic meaning of criminal liability for a burglary of a dwelling. See 18 U.S.C. § 2(a); U.S.S.G. § 2L1.2 cmt. n.5.

We next reject Cordoba-Posos's argument that the Illinois accountability statute is broader than the federal aider and abettor law. In the recent case United States v. Sandoval-Ruiz, No. 07-40977, 2008 WL 4368912 (5th Cir. Sept. 26, 2008), this court considered the Illinois accountability statute and held that it "is not meaningfully broader than federal law." Id. at *3. Rejecting the same challenges to an enhancement that Cordoba-Posos raises here—that the Illinois accountability statute criminalizes solicitation or mere approving presence—this court concluded that "[a]s in the federal statute, the Illinois statute requires the commission of the substantive offense, the intent to promote the offense, and some form of participation in the offense." Id. at *2–3 (citing Stanciel, 606 N.E.2d at 1211–12 (requiring specific intent and proof of participation for

16

liability to attach based on the Illinois accountability statute)); see also People v. Walker, 358 N.E.2d 672, 675 (Ill. App. Ct. 1976) (holding that "[t]o convict a person as an aider and abetter [under section 19-3], the State must establish beyond a reasonable doubt that (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) the defendant's participation took place before or during the offense; and (3) the defendant's participation was accompanied by the concurrent, specific intent to promote or facilitate the commission of the offense").

Regarding the defendant's argument that a "mere approving presence" was sufficient to establish liability under the Illinois accountability statute, this court in Sandoval-Ruiz held that Illinois law requires both approving presence and "'evidence of conduct showing a design on defendant's part to aid in the offense.'" 2008 WL 4368912, at *3 (quoting People v. Martinez, 662 N.E.2d 473, 476 (Ill App. Ct. 1996) (holding that "a fact finder may infer a defendant's accountability from her approving presence at the scene of the crime and from evidence of conduct showing a design on defendant's part to aid in the offense" (internal citation omitted))); see also People v. Taylor, 646 N.E.2d 567, 572 (Ill. 1995) (upholding murder conviction where defendant traveled with primary actor to find victim, knowing primary actor was armed with gun and intended to kill victim, stayed with primary actor after the crime when primary actor retrieved larger weapon, returned to scene of killing, and fled from police upon their arrival).[13]  Overall, in Sandoval-Ruiz, this court concluded that "there is no

[13] To the extent that defendant's counsel during oral argument contended that People v. Taylor, 646 N.E.2d at 572, was an example of the Illinois accountability statute applied, at least in part, to conduct that occurred after the commission of the offense, we disagree. Moreover, the Illinois accountability statute does not create liability as a principal for after-

realistic probability that Illinois would apply the statute to conduct outside the scope of the federal statute." 2008 WL 4368912, at *3.

Sandoval-Ruiz thus controls our disposition of Cordoba-Posos's argument and disposes of his contention that the Illinois accountability statute includes conduct that is broader than the generic meaning of aider and abettor liability as defined by reference to federal law. In addition, Cordoba-Posos fails to produce any Illinois case in which a defendant was charged with agreeing to aid in planning an offense or mere approving presence during an offense without additional participatory conduct and criminal intent that would also give rise to liability under federal law.

In all, the district court did not err by applying the sixteen-level enhancement for burglary of a dwelling under § 2L1.2(b)(1)(A)(ii) for Cordoba-Posos's conviction of residential burglary under section 19-3 on the basis that the Illinois accountability statute renders him liable for less culpable conduct than would the federal aiding and abetting laws.

## III. CONCLUSION

For the above reasons, we AFFIRM the sentence imposed by the district court.

---

the-fact participation. See ILL. REV. STAT., ch. 38, ¶ 5-2 (limiting liability to acts undertaken "[e]ither before or during the commission of the offense"); see also Duenas-Alvarez, 549 U.S. at 189–90 (citing section 5-2 for proposition that every state has abrogated distinction between principals, aiders and abettors, and accessories before the fact, but not accessories after the fact).